# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **TALMER BANK AND TRUST** | : | Case No. 2:15 CV 10648 |
| | : | |
| Plaintiff, | : | Judge: Steven J. Murphy III |
| | : | |
| vs. | : | |
| | : | |
| **NORMAN MALEK** | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff Talmer Bank and Trust ("Talmer") hereby moves this Court to enter judgment on the pleadings with respect to Count I of the Complaint and both claims asserted in the Counterclaim of Defendant Norman Malek, on the grounds that the well-pleaded allegations establish that Talmer is entitled to judgment as a matter of law.  A memorandum in support of this motion is attached.

Respectfully submitted,

/s/ Kenneth Rich
Kenneth Rich (P38349)
krich@richandcampbell.com
Timothy Kaufman (P75347)
tkaufman@richandcampbell.com
RICH & CAMPBELL, P.C.
30665 Northwestern Highway, Suite #201
Farmington Hills, Michigan 48334
Telephone: (248) 406-8000

Robert F. Ware (*app. for admission pending*)
Rob.Ware@ThompsonHine.com
Martin J. Mackowski (*app. for admission pending*)
Martin.Mackowski@ThompsonHine.com
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone:  (216) 566-5500

Attorneys for Plaintiff Talmer Bank and Trust

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| **TALMER BANK AND TRUST** | : | Case No. 2:15 CV 10648 |
| | : | |
| Plaintiff, | : | Judge: Steven J. Murphy III |
| | : | |
| vs. | : | |
| | : | |
| **NORMAN MALEK** | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENT OF ALLEGATIONS ...................................................................... 2

I.    The Acquisition and Consolidation of First Place Bank by Talmer. ..................................... 2

II.   First Place Bank and Malek Enter Into the CIC Agreement. ................................................. 2

III.  Malek Signs an Acknowledgement that the CIC Agreement is Terminated. ..................... 3

IV.   Malek Voluntarily Terminates His Employment with the Bank. ...................................... 4

V.    The Terms of the Release. ................................................................................ 5

VI.   Malek's Arbitration Action. ............................................................................ 6

ARGUMENT ....................................................................................................... 7

I.    The Standard of Review on a Motion for Judgment on the Pleadings. ................................. 7

II.   Talmer is Entitled to Judgment on the Pleadings on Its Claim for Declaratory Judgment Because the Release is Valid and Enforceable and Bars Malek's Claims. .................................... 8

   A.   Malek Admits that He Voluntarily Executed the Release and Received the Promised Consideration. .................................................................................... 8

   B.   Malek's Counterclaims are Within the Scope of the Release. ........................................... 9

   C.   Malek's Allegations of Fraudulent Inducement, Even if True, Cannot Avoid the Effect of the Release Because He Did Not Tender Back the Consideration that He Received for Executing the Release. ...................................................................... 10

III.  Talmer is Entitled to Judgment on the Pleadings on Malek's Claim for Breach of the CIC Agreement. .................................................................................... 13

   A.   Talmer is Entitled to Judgment on the Pleadings Because Malek's Employment Was Not Terminated Within One Year After the Change in Control of First Place Bank. ..................... 13

   B.   Talmer is Entitled to Judgment on the Pleadings Because the Release Bars his Claim for Breach of the CIC Agreement as a Matter of Law. ............................................... 17

IV.   Talmer is Entitled to Judgment on the Pleadings on Malek's Claim for Civil Theft. ...... 17

   A.   Ohio Law Does Not Recognize a Claim for Civil Theft Under Ohio Rev. Code § 2307.60. 17

i

   B.   The Release Bars Malek's Claim for Civil Theft. ........................................................... 19

CONCLUSION ............................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Applegate v. Weadock*,
No. 2-95-24, 1995 Ohio App. LEXIS 5544 (Ohio Ct. App. Nov. 30, 1995)..........................18

*Barnes v. First Am. Title Ins. Co.*,
No.1:06CV574, 2006 U.S. Dist. LEXIS 54984 ....................................................................19

*Edwards v. Madison Twp.*,
No. 97AP-819, 1997 Ohio App. LEXIS 5397 (Ohio Ct. App. Nov. 25, 1997)......................18

*Groves v. Groves*,
No. 09AP-1107, 2010 Ohio App. LEXIS 3819 (Ohio Ct. App. Sept. 23, 2010)
("R.C. 2307.60 is only a codification of the Ohio common law rule that a civil
action is not merged into a criminal prosecution for the same acts that form
the basis for the civil action")...............................................................................................18

*Guardianship of Newcomb v. Bowling Green*,
36 Ohio App. 3d 235, 523 N.E.2d 354 (Ohio Ct. App. 1987)................................................18

*Haeberle v. University of Louisville*,
90 F. App'x 895 (6th Cir. 2004)...............................................................................................8

*Haller v. Borror Corp.*,
50 Ohio St. 3d 10 (1990).............................................................................................9, 11, 12

*Jacob v. Grant Life Choices Fitness Center*,
No. 95APE12-1633, 1996 Ohio Appl LEXIS 2313 (Ohio App. June 4, 1996).....................10

*Jacobs v. Invisible Fence Company, Inc.*,
1999 U.S. App. LEXIS 32201 (6th Cir. 1999) .......................................................................12

*JPMorgan Chase Bank N.A. v. Winget*,
510 F.3d 577 (6th Cir. 2007) ....................................................................................................8

*Mabry v. Ameriquest Mortgage Co.*,
No. 09-12154, 2011 U.S. Dist. LEXIS 100297 (E.D. Mich Aug. 12, 2011).......................7, 8

*McNichols v. Rennicker*,
No. 2002 AP 04 0026, 2002 Ohio App. LEXIS 7023 (Ohio Ct. App. Dec. 18,
2002) .......................................................................................................................................18

*Morgan v. Del Global Techs. Corp.*,
No. 3-:05-CV-123, 2007 U.S. Dist. LEXIS 84638 .................................................................19

*Paskvan v. Cleveland Sivil Serv. Comm'n.*,
    946 F.2d 1233 (6th Cir. 1991) .................................................................8

*Picklesimer v. Baltimore & Ohio R. Co.*,
    151 Ohio St. 1, 84 N.E.2d 214 (Ohio 1949) ........................................11

*Sequa Corp. v. Elyria Foundry Corp.*,
    No. 1:03cv2508, 2006 U.S. Dist. LEXIS 70817 (N.D. Ohio Sept. 29, 2006) .......................10

*Shallenberger v. Motorists Mut. Ins. Co.*,
    167 Ohio St. 494, 150 N.E.2d 295 (Ohio 1958) ...................................11

*Task v. Nat'l City Bank*,
    No. 65617, 1994 Ohio App. LEXIS 437 (Ohio App. Feb. 10, 1994) ......................9

*Weisman v. Blauschild*,
    2008-Ohio-219, 2008 Ohio App. LEXIS 204 (Cuyahoga Cty. 2008) .............................11, 12

*Whittle v. Proctor & Gamble*,
    2007 U.S. Dist. LEXIS 87216 (S.D. Ohio 2007) ...................................19

*Wolf v. Lakewood Hospital*,
    73 Ohio App. 3d 709, 598 N.E.2d 160 (Cuyahoga Cty. 1991) ................19

*Worth v. Huntington Bancshares, Inc.*,
    1987 Ohio App. LEXIS 9827 (Cuyahoga Cty. 1987) .............................16

*Worth v. Huntington Bancshares, Inc.*,
    43 Ohio St. 3d 192, 540 N.E.2d 249 (1989) .........................................16

**Statutes**

Ohio Rev. Code § 2307.60...............................................................17, 18, 19

Ohio Rev. Code § 2307.60(A) ....................................................................18

Ohio Rev. Code § 2913.43 ..........................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 12(c) ...............................................1, 7, 8

LOCAL RULE 7.1 .........................................................................................21

Rule 12(b)(6)...........................................................................................7, 12

Plaintiff Talmer Bank and Trust ("Talmer") submits this motion for judgment on the pleadings with respect to Count I of the Complaint and both claims asserted in the Counterclaim of Defendant Norman Malek ("Malek").

## **INTRODUCTION**

Talmer brought this action for a declaration of its rights pursuant to a Separation Agreement and General Release (the "Release") executed by Talmer and Malek in February 2014. Malek has now asserted counterclaims that are barred by the plain language of the Release. The well-pleaded allegations in this case, including the admissions and factual allegations in Malek's Answer and Counterclaim, establish that Talmer is entitled to judgment as a matter of law.

Malek is a former employee of Talmer's predecessor, First Place Bank. Malek and First Place Bank entered into a Change in Control Severance Agreement (the "CIC Agreement") in 2011, which called for Malek to receive a payment and certain benefits in the event that his employment was terminated within one year after a "change in control" of First Place Bank. The parties disagree as to whether the CIC Agreement remained in effect after June 2012, but the Court does not need to resolve that dispute in order to decide this case as a matter of law. Instead, the Court should enter judgment in Talmer's favor because:

(1)   the Release was validly executed by Malek and Talmer in February 2014 and, by its plain language, extinguished Malek's claims for breach of contract and civil theft that he now purports to assert,

(2)   Malek's assertion that he was fraudulently induced to enter the Release is barred by application of Ohio law, and

(3)   Malek's claim for breach of the CIC Agreement fails by its express terms because he remained employed by First Place Bank for more than a year after the "change in control" occurred.

The Court can make each of the foregoing determinations based solely on the parties' well-pleaded allegations, and therefore there is no reason for this case to proceed through discovery and trial. The allegations conclusively establish that Talmer is entitled to judgment as a matter of law.

## STATEMENT OF ALLEGATIONS

### I.     The Acquisition and Consolidation of First Place Bank by Talmer.

First Place Bank was, until February 2014, a federally-chartered savings association headquartered in Warren, Ohio. (Cmplt. ¶1; Ans. ¶1.) In 2010, First Place Bank experienced financial distress, which led to the bank entering into a Supervisory Agreement with the Office of Thrift Supervision in March 2011. (Cmplt. ¶9; Ans. ¶8.) Those circumstances ultimately led to First Place Bank's acquisition by Talmer Bancorp, Inc., the parent company of Talmer, on January 1, 2013.[1] (Cmplt. ¶1; Ans. ¶1; Ctrclm. ¶13.)

### II.     First Place Bank and Malek Enter Into the CIC Agreement.

Beginning in April 2010, Malek served as Corporate Vice President, Treasurer of First Place Bank. (Cmplt. ¶8; Ans. ¶7.) Because of the financial condition of First Place Bank, and in an effort to retain its key employees, First Place Bank offered various employees the opportunity to execute Change in Control Severance Agreements ("CIC Agreements"), which promised certain benefits to the employees in the event that their employment was terminated within one year after a change of control of First Place Bank. (Cmplt. ¶¶10-11; Ans. ¶¶9-10; Ctrclm. ¶¶9-10.) On or about March 18, 2011, Malek and First Place Bank entered into a CIC Agreement. (Cmplt. ¶10; Ans. ¶9; Ctrclm. ¶8; a copy of the CIC Agreement has been submitted as Exhibit B to the Complaint.)

---

[1] On February 10, 2014, First Place Bank was merged into Talmer, and First Place Bank therefore no longer exists as an active entity. Plaintiff Talmer, which now includes the assets of the former First Place Bank, is a Michigan state-chartered bank with its principal place of business in Troy, Michigan. (Cmplt. ¶1; Ans. ¶1.)

Among other things, the CIC Agreement provided that Malek would be entitled to a payment if there was an applicable change in control of First Place Bank, and within one year of that change in control, First Place Bank either terminated Malek's employment or Malek terminated his employment with good reason (as defined in the CIC Agreement). (Cmplt. ¶11; Ans. ¶10; Cmplt. Ex. B, §3.) A "change in control" ultimately occurred when First Place Bank was acquired by Talmer Bancorp on January 1, 2013. (Ctrclm. ¶14.)

### III.   __Malek Signs an Acknowledgement that the CIC Agreement is Terminated.__

The initial term of the CIC Agreement continued until June 30, 2012. (Cmplt. ¶13; Ans. ¶12; Cmplt. Ex. B, §1.) In or about July 2011, First Place Bank's board of directors conditionally approved an extension of certain CIC agreements, including Malek's, "subject to notice to and non-objection from the Office of Thrift Supervision, or its successor." Thereafter, First Place Bank sought a notice of non-objection from the Office of the Comptroller of the Currency (the "OCC") for an extension of certain CIC agreements then in place (the OCC was the successor of the Office of Thrift Supervision). (Cmplt. ¶13; Ans. ¶12.)

The parties disagree about what happened next. Talmer alleges that in February 2012, the OCC refused to provide the requested notice of non-objection, and despite further efforts, First Place Bank was unable to overcome those objections. For that reason, Talmer alleges that the condition to extending the CIC agreements, including Malek's, was not met, and Malek's CIC Agreement expired pursuant to its terms on June 30, 2012. (Cmplt. ¶¶13-14.) Malek, on the other hand, alleges that the OCC did not reject the CIC Agreements, but only informed First Place Bank that it had not submitted the proper documentation to obtain approval. (Ctrclm. ¶25.) Malek further alleges that First Place Bank "opted not to provide the information the OCC had requested and made no further effort to gain approval" of the CIC Agreements. (Ctrclm. ¶25.)

There is no dispute that on March 27, 2013, Malek executed a Receipt and Acknowledgement (the "Acknowledgement") acknowledging that because the OCC had refused to provide the requested notice of non-objection, the CIC Agreement was terminated and no longer in effect. (Cmplt. ¶16; Ans. ¶15; a copy of the Acknowledgement has been submitted as Exhibit C to the Complaint.)

Malek claims that he was fraudulently induced to enter into the Acknowledgement. He alleges that in late 2012 and again in March 2013 he was informed by First Place Bank's Director of Human Resources that his CIC Agreement had not been approved by the OCC and was therefore no longer in effect. (Ctrclm. ¶¶22-23.) Malek alleges that he executed the Acknowledgement based on that understanding, which was false. (Ctrclm. ¶23.)

## IV. <u>Malek Voluntarily Terminates His Employment with the Bank.</u>

Regardless of whether the CIC Agreement was legally in effect, Malek remained employed by First Place Bank, and later Talmer, for more than one year after the "change in control" that occurred on January 1, 2013. (Cmplt. ¶17; Ans. ¶16.) Malek voluntarily terminated his employment effective February 11, 2014, pursuant to a Separation Agreement and General Release (the "Release") executed on February 24, 2014. (Cmplt. ¶19; Ans. ¶18; a copy of the Release has been submitted as Exhibit A to the Complaint.) Malek received $33,313 in return for executing the Release. (Cmplt. ¶20; Ans. ¶19; Ctrclm. ¶33.) The terms of the Release are discussed in detail below.

Malek has alleged that he voluntarily terminated his employment for "Good Reason" as defined under the CIC Agreement. (Ctrclm. ¶21.)[2] According to Malek, after First Place Bank was acquired by Talmer Bancorp, he was stripped "of most of the authority and responsibility he

---

[2] Talmer disputes these allegations but acknowledges that the Court is obliged to accept them as true for purposes of the present motion.

previously had as Treasurer." (Ctrclm. ¶15.) Malek alleges that he "ended up essentially as a functionary, performing relatively unimportant assignments, including the transition of responsibilities, given to him by [Talmer's] personnel who had taken over management of the Bank." (Ctrclm. ¶16.) Malek further alleges that Talmer "made it practically impossible for him to do his job as Treasurer competently and completely" by blocking his access to First Place Bank's Board of Directors and regulators. (Ctrclm. ¶¶18-19.)

## V.    **The Terms of the Release.**

Pursuant to Section 3(A) of the Release, Malek released all claims against Talmer, the successor to First Place Bank, including known and unknown claims for breach of contract and fraud. (Cmplt. Ex. A, §3(A).) Specifically, Malek released:

> any and all claims or causes of action, both known and unknown, arising prior to you signing this Agreement that you may have or claim to have against them, including, but not limited to, claims arising under or related to your employment and/or the termination of your employment from the Company, claims of wrongful discharge, breach of employment policy, ***breach of contract***, discharge in violation of public policy, unfair labor practice charge, harassment, intentional infliction of emotional distress, defamation, invasion of privacy, reimbursement of tuition and other educational costs, disability claims, claims of ***fraud***, negligence (including negligent hiring and retention), prima facie tort, implied contracts or implied covenants of good faith and fair dealing, . . . and any and all other federal, state and local statutes, cases, authorities, and laws providing a cause of action that may be the subject of a release.

(*Id.*, emphasis added.) Any question as to whether the terms of the Release would include claims for breach of the CIC Agreement is removed by the Release's Recitals, which provide (emphasis added):

> WHEREAS, you and the Company mutually desire to resolve, fully and finally, all matters relating to any claims that you may have concerning your employment with the Company and the termination thereof, ***including any***

> *existing change-of-control, severance, or other such*
> *agreements*;

(Cmplt. Ex. A, p. 1.)[3]

The Release clearly and repeatedly advises Malek to consult with legal counsel before executing it.  (Cmplt. ¶23; Ans. ¶22.)  Each page of the six page document contains the following statement in a footer:  "PLEASE CONSULT WITH AN ATTORNEY BEFORE EXECUTING THIS DOCUMENT."  Further, Section 25 of the Release states:

> The Company advises you to consult with legal counsel of
> your choice regarding this Agreement and how it impacts
> any rights or claims that you may have against the
> Company and the Company Representatives.

And the following statement is appended immediately below the signature block, in all-caps:

> <u>CAUTION TO EMPLOYEE</u>: READ THIS AGREEMENT
> AND CONSULT WITH LEGAL COUNSEL BEFORE
> SIGNING IT. BY SIGNING THIS AGREEMENT, YOU
> ARE AGREEING TO RELEASE CERTAIN RIGHTS
> AND/OR CLAIMS YOU MAY HAVE AGAINST THE
> COMPANY        AND        THE        COMPANY
> REPRESENTATIVES.

(Cmplt. Ex. A, pp. 1-6, §25.)

Malek was given ample time to consult with his attorneys before signing the Release. (Cmplt. ¶24; Ans. ¶23.)  Section 10 of the Release provided Malek a 45-day period in which to consider whether to enter into it.  After he signed the Release, Malek was provided an additional seven days, pursuant to Section 12, in which to revoke it.  (Cmplt. Ex. A, §§10, 12.)

## VI.    <u>Malek's Arbitration Action.</u>

On February 6, 2015, Malek sent a Demand for Arbitration to the American Arbitration Association, purporting to assert a claim for breach of the CIC Agreement (the "Arbitration

---

[3] The Release also makes clear that Malek's putative rights under the CIC Agreement could not be revived. Pursuant to Section 1(C) of the Release, even in the event that Malek were to be rehired by Talmer, he "would not be eligible for any future monetary settlement, such as pursuant to a change-of-control agreement."  (Cmplt. Ex. A, §1(C).)

Action").  (Cmplt. ¶37; Ans. ¶36.)  Because Talmer believed that Malek's claim for breach of the CIC Agreement was barred by the Release, and because this Court is granted exclusive jurisdiction to adjudicate claims relating to the Release, Talmer filed this Action on February 20, 2015.  Thereafter, Malek voluntarily dismissed the Arbitration Action and filed his counterclaims in this case.  Thus, while Talmer's request to stay the Arbitration Action has been mooted by Malek's dismissal of that proceeding, its claim for determination of its rights under the Release remains active.  That claim, along with the two claims asserted by Malek in his Counterclaim, are the subject of this motion.

## **ARGUMENT**

### I.     **The Standard of Review on a Motion for Judgment on the Pleadings.**

A party may move for judgment on the pleadings at any time after the pleadings are closed, but early enough not to delay trial.  FED. R. CIV. P. 12(C).  A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the standards for dismissal stated in Rule 12(b)(6).  *Mabry v. Ameriquest Mortgage Co.*, No. 09-12154, 2011 U.S. Dist. LEXIS 100297, at *4 (E.D. Mich Aug. 12, 2011) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

Thus, "'[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'"  *JPMorgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  The Court must look to the factual allegations contained in the pleadings, as opposed to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Mabry*, 2011 U.S. Dist. LEXIS 100297, at *4 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

A Rule 12(c) motion should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Sivil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991). In granting a Rule 12(c) motion, the Court may consider exhibits incorporated by reference into the pleadings. *Haeberle v. University of Louisville*, 90 F. App'x 895, 897 n.1 (6th Cir. 2004) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

## II.   Talmer is Entitled to Judgment on the Pleadings on Its Claim for Declaratory Judgment Because the Release is Valid and Enforceable and Bars Malek's Claims.

Talmer's claim for Declaratory Judgment is based on the plain language of the Release and its indisputable legal consequences. The admissions in Malek's Answer, and the allegations in his Counterclaim, establish the necessary factual predicate to enforce the Release as written.[4]

### A.   Malek Admits that He Voluntarily Executed the Release and Received the Promised Consideration.

There is no dispute in this case that Malek executed the Release in connection with the termination of his employment and that he received the full consideration – $33,313 – promised to him. (Cmplt. ¶20; Ans. ¶19; Ctrclm. ¶33.) As Malek freely admits, he was given *ample* time to review the Release before it took effect (Cmplt. ¶24; Ans. ¶23), and he was repeatedly advised to consult with legal counsel before executing it. (Cmplt. ¶23; Ans. ¶22.) Malek has retained the $33,313 paid to him, and he did not tender it back to Talmer before bringing his claims. (Cmplt. ¶¶20, 48; Ans. ¶¶19, 46.) Therefore, on its face, the Release is a valid and binding obligation on Malek and Talmer and operates to bar any later-asserted claims that fall within its scope. *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 13 (1990) ("A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release … To

---

[4] Both the Release (Section 14) and the CIC Agreement (Section 14) are governed by Ohio law. Therefore, Talmer will cite to Ohio law with respect to the substantive legal issues raised in this motion.

avoid that bar, the releasor must allege that the release was obtained by fraud and that he has tendered back the consideration received for his release") (internal citations omitted).

The *only* basis upon which Malek claims the Release to be invalid is his allegation that he was fraudulently induced to enter it based upon the false assertion by First Place Bank that the CIC Agreement was no longer in effect.  (Ctrclm. ¶28.)  As addressed below, that claim fails as a matter of law.

### B.      *Malek's Counterclaims are Within the Scope of the Release.*

The Release, in both its general and specific terms, encompasses and therefore discharges Malek's claims for breach of the CIC Agreement and for Civil Theft.

In Section 3(A) of the Release, Malek agreed to a broad release of all claims against Talmer, the successor to First Place Bank, including known and unknown claims for breach of contract and fraud.  (Cmplt. Ex. A, §3(A).)  Under Ohio law, this broad release language operates to bar any claims based on actions that occurred prior to execution of the release.  *See, e.g., Task v. Nat'l City Bank*, No. 65617, 1994 Ohio App. LEXIS 437, at *13-14 (Ohio App. Feb. 10, 1994) (ordinary meaning of broad release language reflected intent to release wide variety of claims; if releasor suspected wrongdoing, it was incumbent upon him to manifest intent to exclude certain claims from scope of release).

In addition to its broad language, the Release specifically references the parties' mutual intentions to "resolve, fully and finally" matters relating to any "***change-of-control, severance***, or other such agreements."  (Cmplt. Ex. A, p. 1, emphasis added.)  It is worth noting that the full title of Malek's CIC Agreement is the "Change in Control Severance Agreement."  This specific reference in the Release's recitals is accompanied by another in the body of the agreement that makes clear that, in the event that he were to be rehired by Talmer, Malek "would not be eligible for any future monetary settlement, such as pursuant to a change-of-control agreement . . ."

(Cmplt. Ex. A, §1(C).)  The specific references to Malek's rights under a "change-of-control agreement" remove any doubt that the broad language of the Release is meant to encompass any claims relating to the CIC Agreement.  *See, e.g., Sequa Corp. v. Elyria Foundry Corp.*, No. 1:03cv2508, 2006 U.S. Dist. LEXIS 70817, at *22 (N.D. Ohio Sept. 29, 2006) (quoting *Task*, 1994 Ohio App. LEXIS 437, at *4) (when terms of a release are unambiguous, courts will not create a new contract by finding an intent not expressed in the language employed by the parties;  *Jacob v. Grant Life Choices Fitness Center*, No. 95APE12-1633, 1996 Ohio Appl LEXIS 2313, at *9 (Ohio App. June 4, 1996) (rejecting party's assertion that he did not intend to release negligence claim where clause included the words "release" and "negligence").  Under the circumstances, there can be no good faith dispute that the Release contemplated, and was intended to discharge, any claims that Malek might assert relating to his CIC Agreement.

> **C.**     ***Malek's Allegations of Fraudulent Inducement, Even if True, Cannot Avoid the Effect of the Release Because He Did Not Tender Back the Consideration that He Received for Executing the Release.***

Ohio law is crystal clear that a party may not assert a claim attacking the validity of a release for fraud in the inducement unless he has previously tendered back the consideration that he received in making the release.  *Haller v. Borror Corporation*, 50 Ohio St. 3d 10, syl. ¶2,  552 N.E.2d 207 (1990).  *See also Shallenberger v. Motorists Mut. Ins. Co.*, 167 Ohio St. 494, 150 N.E.2d 295 (Ohio 1958); *Picklesimer v. Baltimore & Ohio R. Co.*, 151 Ohio St. 1, 84 N.E.2d 214 (Ohio 1949).  The tender-back rule is based on long-standing Ohio public policy that favors the "prevention of litigation by the compromise and settlement of controversies."  *Haller* at 211, *citing White v. Brocaw*, 14 Ohio St. 339, 346 (1863).  *See also Weisman v. Blauschild*, 2008-Ohio-219, 2008 Ohio App. LEXIS 204 at *10-*11 (Cuyahoga Cty. 2008).  For this reason, "a releasor ought not be allowed to retain the benefit of his act of compromise and at the same time attack its validity when he understood the nature and consequence of his act, regardless of the

basic nature of the inducement employed." *Id.*, *citing Shallenberger* at 295.  "In that event, the consideration should first be returned so that the parties may be placed in the positions they enjoyed prior to the practice of the fraud alleged." *Id.*

In *Haller*, the Ohio Supreme Court was presented with circumstances analogous to the present case.  A former employee had agreed to settle and release his wrongful termination claim and accepted $50,000 in settlement proceeds, and he later brought an action seeking additional amounts.  The former employee claimed that he had signed the release under duress and based on misrepresentations by his former employer concerning the ultimate value of his claim.  *Id.* at 11.  The Court held that the former employee's attack on the validity of the release amounted to a claim for fraud in the inducement, as opposed to fraud in the factum, and reinstated the trial court's entry of judgment in favor of the former employer.  *Id.* at 13-17.

Malek's allegations of fraud here amount to a claim for fraud in the inducement.  Malek asserts that he was falsely informed that his CIC Agreement was no longer in effect, which led him to accept a lesser amount for the Release than he otherwise would have demanded.  To put it in terms used by the Ohio Supreme Court, this is not a claim relating to the "nature or purport of the release," but rather a claim of fraud based on "the facts inducing its execution."  *Id.* at 14. Malek has not claimed, or alleged facts that would support, fraud in the factum.  Fraud in the factum is based on a misrepresentation of the nature of the release itself, *i.e.*, where a person is misled into believing that the document he is signing is something other than a release.  Fraud in the factum cannot exist "when the releasor has an opportunity to read and understand the document before execution."  Malek has admitted that he had ample time to review the Release. He has not, and cannot, allege fraud in the factum.

Applying the Ohio Supreme Court's holding in *Haller*, the Sixth Circuit has upheld a District Court's dismissal, based on Fed. R. Civ. P. 12(b)(6), of a claim seeking to set aside a settlement and release based on fraudulent inducement. *Jacobs v. Invisible Fence Company, Inc.*, 1999 U.S. App. LEXIS 32201 (6th Cir. 1999). In *Jacobs*, the plaintiffs had settled a products liability claim based on representations, later alleged to be false, regarding the value of prior settlements of similar claims. Relying on *Haller* and its predecessor cases, the District Court granted the defendant's motion to dismiss based on the parties' allegations, which established that plaintiffs had not tendered back the consideration they had received in connection with the settlement. *Id.* at *6-*13.

The tender-back rule has been strictly applied without exceptions. In *Jacobs*, The Sixth Circuit rejected the plaintiffs' argument that they should be permitted to avoid the rule where it would be impossible or impracticable for the releasee to tender back the consideration. *Id.* at *10-*11. Ohio courts have been similarly strict. For example, in *Weisman v. Blauschild, supra*, the court was emphatic:

> "[Appellants] *only* had *one option*. They first *had to rescind and tender back the consideration – before* they could bring their suit."

2008 Ohio App. LEXIS at *17 (emphasis in original).

Here, Malek has admitted that he received the consideration due to him under the Release and that he did not tender back that consideration prior to asserting his claims. (Cmplt. ¶¶20, 48; Ans. ¶¶19, 46.) Accordingly, Malek is precluded from attacking the Release on the basis of fraud in the inducement.

In summary, Malek's admissions and allegations in the pleadings establish that the Release was validly executed and enforceable. Therefore, judgment on the pleadings may be entered in favor of Talmer. Specifically, the Court may enter judgment declaring that (a) the

12

Release is a valid and enforceable contract, and (b) the Release bars any claims relating to Malek's interest in benefits purportedly arising under the CIC Agreement, including those asserted by Malek in this case.

**III.    Talmer is Entitled to Judgment on the Pleadings on Malek's Claim for Breach of the CIC Agreement.**

Judgment may be entered in Talmer's favor on Malek's claim for breach of the CIC Agreement for two reasons:  (A)  Malek's allegations establish that he is not entitled to a payment under the CIC Agreement because he remained employed by First Place Bank for more than one year after the change in control, and (B) the plain language of the Release bars Malek's claim.

**A.    *Talmer is Entitled to Judgment on the Pleadings Because Malek's Employment Was Not Terminated Within One Year After the Change in Control of First Place Bank.***

Even if Malek had not executed the Release, his claim for breach of the CIC Agreement would fail.  Malek is not be entitled to any payout under the CIC Agreement because he remained employed by First Place Bank for more than one year after a "change in control" took place.  There is no dispute regarding Malek's tenure at First Place Bank nor as to the terms of the CIC Agreement, and judgment may therefore be entered in favor of Talmer on Malek's claim for breach of the CIC Agreement.

The plain language of the CIC Agreement makes clear that Malek would only be entitled to a payment if his employment was terminated within one year of a change in control.  Section 3 of the CIC Agreement provides that Malek is entitled to benefits under the agreement "[i]f there is a Change in Control of the Bank or the Holding Company during the Term of this Agreement, and *if within one year following the effective date of the Change in Control*, the Bank terminates

Executive's employment without Cause or Executive terminates the employment for Good Reason . . ." (Cmplt. Ex. B, §3.)

There is no dispute, and the parties' allegations conclusively establish, that a "change in control" occurred when First Place Bank was acquired by Talmer Bancorp on January 1, 2013. (Ctrclm. ¶14.)   Likewise, the parties do not dispute that Malek voluntarily terminated his employment effective February 11, 2014, more than 13 months after the change in control event. (Cmplt. ¶19; Ans. ¶18.)  Thus, Malek is not entitled to a payout under the CIC Agreement by its express terms.

Malek attempts to avoid this outcome by again relying on his claim of fraudulent inducement.  Thus, in addition to claiming that his mistaken belief concerning the validity of the CIC Agreement caused him to enter into the Acknowledgement and the Release, Malek also asserts that it led him to *stay employed by First Place Bank for more than one year*.  Malek alleges that had he not been informed that his CIC Agreement had been terminated, he "would have left to collect the compensation that the Agreement made available . . ." (Ctrclm. ¶24.)

But Malek's after-the-fact guess at what his behavior would have been – even if true – is of no moment here.  The one-year window established by the CIC Agreement was not akin to an option agreement, which Malek was entitled to exercise at his discretion.  Instead, the provision is essentially a guarantee of at least one year of employment after a change in control.  By staying for the full one-year period, Malek received the benefit of the guarantee, which is what the CIC Agreement was meant to ensure.

The plain language and grammatical structure of Section 3 establish that the one-year window is an express condition that is dependent on the occurrence of a defined event, namely

14

termination of employment.  Indeed, Malek's own description of this term of the CIC Agreement is telling.  Malek alleges:

> Under its terms, the Defendant would become entitled to a "lump sum payment equal" to his "Average Annual Compensation" over a prescribed period in the event that (A) the Bank or FPFC underwent a "Change in Control," and (B) ***his employment ended sometime during the ensuing year***, either because the Bank terminated it "without Cause" or because he did so for "Good Reason."

(Ctrclm. ¶ 10.)  As Malek himself describes it, the ending of his employment "during the ensuing year" is fixed and definite condition to recovery under the CIC Agreement.  Thus, Malek's state of mind (*i.e.*, whether he believed the CIC Agreement was in effect or not) is not relevant. Malek is not entitled to a recovery under the plain terms of the CIC Agreement, and the alleged fraud is not relevant.

Moreover, had Malek in fact voluntarily terminated his employment within the one-year window for the purpose of "collect[ing] the compensation that the Agreement made available," he would not have been entitled to a payout.  As noted above, the CIC Agreement was not an option granted to Malek, it was essentially a guarantee of one year of employment.  In order to be entitled to a payout based on a voluntary termination within the one-year window, Malek's termination of his employment had to be for "Good Reason."  While Malek alleges that the conditions set forth in the CIC Agreement to establish Good Reason did occur during the year following the change in control (Ctrclm. ¶¶15-21), he did not in fact terminate his employment for Good Reason during that time.  And had Malek left First Place Bank simply "to collect the compensation that the Agreement made available," he also would not have terminated his employment for Good Reason.

Thus, Malek's self-serving counterfactual – that had he believe the CIC Agreement was in place, he would have left First Place Bank in order to collect compensation – is also a self-

defeating admission.  Had he done so, it would not have been a termination for Good Reason, and he would not have been entitled to a payout.

Ohio courts have referred to agreements like Malek's CIC Agreement as "golden parachutes." *Worth v. Huntington Bancshares, Inc.*, 43 Ohio St. 3d 192, 196, 540 N.E.2d 249, 254 (1989) ("In general, 'golden parachutes' are defined as 'agreements between a corporation and its top officers which guarantee those officers continued employment, payment of a lump sum, or other benefits in the event of a change of corporate ownership'"), *quoting Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 3, fn.2 (1985).  As the lower court in *Worth* explained, the purpose of golden parachutes is the retention of key employees by a company that may be a target for a corporate takeover.  By providing a defined measure of job security following such an event, the employee is incentivized not to "jump ship" from the target company.  *Worth v. Huntington Bancshares, Inc.*, 1987 Ohio App. LEXIS 9827 at *50-55 (Cuyahoga Cty. 1987). Because golden parachutes have sometimes been abused as a means of conferring unearned windfalls on corporate employees, courts have strictly construed their terms to ensure that they include legitimate conditions for payouts and that those conditions are in fact met.  *Id.* at *63-69. For this reason, the appellate court in *Worth* endorsed the principle that "golden parachutes that give managers an *unconditional right of termination* should be invalidated."  *Id.* at *67.

What Malek effectively seeks here is to have the Court construe his golden parachute as conveying  an "unconditional right of termination."  He claims that he should be entitled to elect to receive benefits of the CIC Agreement by leaving his employment ***not*** for "Good Reason" as required in the CIC Agreement, but simply so that he could "collect the compensation that the Agreement made available."  To construe his golden parachute in this manner would not only violate the express language of the CIC Agreement but would also be against Ohio public policy.

Malek is not entitled to claim any benefits under the CIC Agreement based on its express terms and the undisputed facts.  His attempt to rely on fraudulent inducement also fails, because his state of mind does not affect the operative language of the CIC Agreement and his claim that he would have left the bank earlier precludes a recovery.  Therefore, Talmer is entitled to judgment on Malek's claim for breach of the CIC Agreement.

> **B.    Talmer is Entitled to Judgment on the Pleadings Because the Release Bars his Claim for Breach of the CIC Agreement as a Matter of Law.**

Even if Malek could assert a valid claim for breach of the CIC Agreement, that claim would be barred by the Release.  As shown above, the Release is valid and enforceable and clearly encompasses any claim purportedly arising under the CIC Agreement.  Because Malek indisputably released all claims relating to his rights under the CIC Agreement, judgment should be entered for Talmer on this basis as well.

**IV.    Talmer is Entitled to Judgment on the Pleadings on Malek's Claim for Civil Theft.**

Judgment may be entered in Talmer's favor on Malek's claim for civil theft for two reasons:  (A)  Ohio law does not recognize a claim for civil theft, and Ohio Rev. Code § 2307.60 does not create such a cause of action, and (B) the plain language of the Release bars Malek's claim.

> **A.    Ohio Law Does Not Recognize a Claim for Civil Theft Under Ohio Rev. Code § 2307.60.**

The second claim of Malek's Counterclaim purports to assert a claim based on civil theft arising from the alleged fraudulent statement to Malek that the CIC Agreement was no longer in effect.  Malek alleges that this statement constituted the crime of "Securing writings by deception" under Ohio Rev. Code § 2913.43, which he claims is a "theft offense" under Ohio law.  (Ctrclm. ¶¶39-42.)  Malek asserts that he is entitled to recover in a civil cause of action for this purported crime based on Ohio Rev. Code § 2307.60(A).

17

Malek's unique legal theory fails. Ohio courts have consistently held that Section 2307.60 does not create a separate civil cause of action; rather, the statute is intended only to clarify that a crime victim may still assert a civil claim, where such a cause of action exists, when the defendant has been prosecuted criminally for the same conduct. *Groves v. Groves*, No. 09AP-1107, 2010 Ohio App. LEXIS 3819, at *17 (Ohio Ct. App. Sept. 23, 2010) ("R.C. 2307.60 is only a codification of the Ohio common law rule that a civil action is not merged into a criminal prosecution for the same acts that form the basis for the civil action"). *See also McNichols v. Rennicker,* No. 2002 AP 04 0026, 2002 Ohio App. LEXIS 7023, at *9-10 (Ohio Ct. App. Dec. 18, 2002); *Edwards v. Madison Twp.*, No. 97AP-819, 1997 Ohio App. LEXIS 5397, at *17-18 (Ohio Ct. App. Nov. 25, 1997); *Applegate v. Weadock*, No. 2-95-24, 1995 Ohio App. LEXIS 5544, at *8 (Ohio Ct. App. Nov. 30, 1995); *Guardianship of Newcomb v. Bowling Green*, 36 Ohio App. 3d 235, 241, 523 N.E.2d 354 (Ohio Ct. App. 1987). Thus, in order to recover in a civil action for a "theft offense" or any criminal act, a *"*party must rely on a separate civil cause of action, existent either in the common law or through statute . . ." *Groves, supra* at **17.[5]

Malek's allegations do not purport to assert a cause of action independent of Section 2307.60, and therefore his claim may be dismissed on its face. Moreover, to the extent that Malek seeks to argue that there is a common law cause of action for "civil theft," his claim also fails because Ohio law does not recognize any such claim. *Whittle v. Proctor & Gamble*, 2007 U.S. Dist. LEXIS 87216 (S.D. Ohio 2007) ("in Ohio, there is no civil law theft claim"). *See also Wolf v. Lakewood Hospital*, 73 Ohio App. 3d 709, 715, 598 N.E.2d 160 (Cuyahoga Cty. 1991). Instead, Ohio law recognizes the tort of "conversion" where property has been wrongfully taken, but that claim only applies to tangible property or a specifically identifiable fund. *Morgan v. Del*

---

[5] This proposition of law is well established in Ohio. Indeed, the appellate court in *Groves* found the appellee's "attempts to fashion such a cause of action" to be "frivolous conduct." *Groves* at **18.

*Global Techs. Corp.*, No. 3-:05-CV-123, 2007 U.S. Dist. LEXIS 84638, at *51-52 ("Existing law generally allows actions for conversion to be based only upon the taking of identifiable, tangible personal property.  An action for conversion of money is generally not recognized except where the money is specifically identifiable.") (internal citations omitted); *Barnes v. First Am. Title Ins. Co.*, No.1:06CV574, 2006 U.S. Dist. LEXIS 54984, at *25 (Where a complaint "does not allege the monies owed were earmarked or sequestered but indicates merely a debt owed, an action for conversion will not lie.").  Malek cannot assert a claim for conversion based on the allegation that he was "duped" into signing the Release and giving up his right to certain payments under the CIC Agreement.

Because Ohio law does not recognize the civil theft claim that Malek purports to assert under Section 2307.60, judgment on the pleadings should be entered for Talmer.

### B.    The Release Bars Malek's Claim for Civil Theft.

Even if Ohio law recognized the civil theft claim purportedly asserted by Malek, that claim would be barred by the Release.  As shown above, the Release is valid and enforceable and was executed by Malek subsequent to the alleged actions that ostensibly gave rise to his claim.  Pursuant to Section 3 of the Release, Malek released "all claims and causes of action" against Talmer, which specifically included claims relating to his employment and those relating to breach of contract and fraud.  Because Malek indisputably released all claims relating to his rights under the CIC Agreement, his claim for "civil theft" is barred, and judgment should be entered for Talmer.

### CONCLUSION

For the foregoing reasons, based on the well-pleaded allegations in this case, plaintiff Talmer Bank and Trust is entitled to judgment on the pleadings as a matter of law and respectfully requests that its motion be granted.

Respectfully submitted,

/s/ Kenneth Rich
Kenneth Rich (P38349)
krich@richandcampbell.com
Timothy Kaufman (P75347)
tkaufman@richandcampbell.com
RICH & CAMPBELL, P.C.
30665 Northwestern Highway, Suite #201
Farmington Hills, Michigan 48334
Telephone: (248) 406-8000

Robert F. Ware (*app. for admission pending*)
Rob.Ware@ThompsonHine.com
Martin J. Mackowski (*app. for admission pending*)
Martin.Mackowski@ThompsonHine.com
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone:  (216) 566-5500

Attorneys for Plaintiff Talmer Bank and Trust

## CERTIFICATION OF COMPLIANCE WITH
## EASTERN DISTRICT OF MICHIGAN LOCAL RULE 7.1

Pursuant to Eastern District of Michigan Local Rule 7.1, the undersigned attorney certifies that counsel for Talmer Bank and Trust has requested concurrence from Counsel for Norman Malek in Plaintiff's Motion for Judgment on the Pleadings and that such concurrence has been denied.

/s/ Kenneth Rich
*Attorney for Plaintiff Talmer*
*Bank and Trust*

<u>**CERTIFICATE OF SERVICE**</u>

A copy of the foregoing was filed electronically with the Court this 7th day of April, 2015. Service will be made by the Court's electronic notification system, and all parties may access this filing through the Court's system.

/s/ Kenneth Rich
*Attorney for Plaintiff Talmer*
*Bank and Trust*